# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WCSE MONTANE LIMITED | ) | Case No. 09-18752 |
| PARTNERSHIP, *et al.*, | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) | Hon. Jacqueline P. Cox |

## ORDER APPROVING COMPROMISE

Upon consideration of the motion (the "Motion") of WCSE Montane Limited Partnership, CF Montane SLP, LLC, and CF Montane LP, LLC (collectively, the "Debtors") requesting this court's approval of the Debtors' proposed compromise (the "Proposed Compromise") of the various claims and causes of action at issue in the Lawsuit,[1] including the Debtors' associated veil piercing and alter ego claims against certain non-debtor affiliates; having found that adequate and sufficient notice of the Motion has been given and that sufficient cause appears therefor; it is hereby ORDERED:

1.      The Motion is hereby granted.

2.      The Proposed Compromise upon the terms and conditions set forth in the Motion is fair and reasonable, and approval of the Proposed Compromise is in the best interests of the Debtors' creditors.  Consequently, the Proposed Compromise is hereby approved and authorized.

3.      The Proposed Compromise having been approved, the Debtors are hereby authorized to take such further actions and execute or ratify such documents, including the

---

[1] Capitalized terms not otherwise defined carry the same meaning ascribed to them in the Motion.

{7108 ORD A0237392.DOC}

Settlement Agreement attached to the Motion, as may be necessary to evidence the Proposed Compromise.

4.     The Debtors are also authorized to make the settlement payment that they are obligated to make in accordance with the Settlement Agreement.

5.     This Order shall be effective and enforceable immediately upon entry, and it shall not be stayed under Fed. R. Bankr. P. 6004(h) or any other applicable rule.

ENTER:

Dated: _Sept. 1, 2009_

_J. P. Cox   Jacqueline P. Cox_
Jacqueline P. Cox
United States Bankruptcy Judge

**_Prepared By_**:

Steven B. Towbin (#2848546)
Peter J. Roberts (#6239025)
Shaw Gussis Fishman Glantz
   Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is made by and among the following persons who are collectively referred to as the "**Parties:**"

A.      La Grange Acquisition, L.P. ("**La Grange**") and E.T. Company, Ltd. ("**ETC**"), collectively referred to as the "**La Grange Parties;**"

B.      Drexel Montane Condominium Association, Inc. n/k/a The Montane Condominium Association, on behalf of itself and all unit owners on matters affecting the condominiums, referred to as the "**Association;**"

C.      James E. Girards, referred to as "**Girards;**"

D.      WCSE Montane Limited Partnership f/k/a Drexel Montane Limited Partnership ("**WCSE**"); CF Montane SLP, LLC ("**CF SLP**"); CF Montane LP, LLC ("**CF LP**"); Wrightwood Capital Strategic Equity Fund I GP, LLC ("**Fund GP**"); Wrightwood Capital Strategic Equity Fund I LP (the "**Fund**"); and Wrightwood Capital, LLC ("**Wrightwood**"); all of whom are collectively referred to as the "**Wrightwood Parties;**"

E.      Drexel Development Company, LLC ("**DDC**"); DGP, LLC; Wiggins Woodside Partnership; Site Resources Montane, Ltd.; Montane Investors Limited Partnership; R. Glenn Wiggins; Robert Dale; and Robert M. Edelman; all of whom are collectively referred to as the "**Drexel Parties;**"

F.      Intercity Investments, Inc., referred to as "**ICI;**" and

G.      All of the foregoing parties are collectively referred to as "the parties."

## RECITALS

**WHEREAS**, WCSE and Wrightwood filed suit against the Drexel Parties in the case styled *WCSE Montane Limited Partnership, et. al v. Drexel Development Company, LLC, et al.,* No. 07-03400-K, in the 192nd Judicial District Court of Dallas County, Texas (the "**Original**

Lawsuit"), asserting that one or more of the Drexel Parties (a) are responsible for indemnifying WCSE and Wrightwood in connection with claims asserted by the Association regarding alleged defects at The Montane Condominiums ("**The Montane**") located at 2848 Woodside in Dallas, Texas, (b) breached the May 3, 2006 Settlement Agreement between the Drexel Parties; CF SLP; CF LP; CF Highlander LP LLC; and CF Highlander SLP LLC, (c)  and other claims relating to the May 3, 2006 Settlement Agreement by non-disclosure; and claims of misrepresentation and non-disclosures related to The Montane; and (d) tortiously interfered with a May 8, 2006 contract between WCSE and Republic Title;

**WHEREAS**, Girards intervened in the Original Lawsuit and asserted (a) claims against WCSE and Wrightwood for breach of contract, fraud, conspiracy to defraud, violations of the Texas Deceptive Trade Practices Act, in connection with his purchase of unit 605 in The Montane; and (b) claims, which claims against the Drexel Parties were later dismissed, against the Association and certain Drexel Parties related to misrepresentations and assessments imposed on Girards by the Association;

**WHEREAS**, La Grange filed suit against WCSE, DDC, the Association, and its members on September 21, 2007, in the case styled *La Grange Acquisition, L.P. v. WCSE Montane Limited Partnership, et al.*, No. 07-11356, in the 101st Judicial District Court of Dallas County, Texas, asserting numerous claims related to property damage at 2838 Woodside in Dallas County, Texas and its leasehold estate on 2848 Woodside;

**WHEREAS**, WCSE and Wrightwood filed suit in Cause No. cc-07-16349-b, in County Court at Law No. 2 of Dallas County, Texas, against Republic Title of Texas, Inc., in which DDC was named as a third-party defendant and asserted claims of offset and indemnity, (the "County Court Suit"), which suit was transferred to the 192nd District Court and was consolidated with the Original Lawsuit;

<u>MONTANE SETTLEMENT AGREEMENT</u> – **Page 2**

WHEREAS, La Grange non-suited its claims against the Association's individual members and agreed to a consolidation of its action into the Original Lawsuit, which in fact occurred on January 7, 2008;

WHEREAS, La Grange asserted claims in the Original Lawsuit for property damage at 2838 Woodside and its leasehold estate on 2848 Woodside against (a) DDC for trespass, nuisance, and negligence, (b) WCSE for trespass, nuisance, negligence, negligence per se, violations of Section 11.086 of the Texas Water Code, and injunctive relief, (c) the Wrightwood Parties as alter egos, and (d) the Association for trespass, nuisance, negligence, negligence per se, violations of Section 11.086 of the Texas Water Code, and injunctive relief;

WHEREAS, La Grange asserted claims in the Original Lawsuit against WCSE and the Association in connection with alleged breaches and repudiation of a January 9, 2006 Lease related to parking spaces at 2848 Woodside;

WHEREAS, WCSE and the Association brought claims in the Original Lawsuit against La Grange for expenses (including attorneys' fees) incurred in defending against La Grange's lease claims;

WHEREAS, the Association, on behalf of itself and all unit owners on matters affecting the condominiums, filed claims in the Original Lawsuit in connection with property damage to common areas of The Montane and claims by La Grange against the Association against (a) Wrightwood and/or WCSE for breach of sale contracts with individual unit owners at The Montane, breach of warranties allegedly owed to individual unit owners at The Montane, negligence, and violations of the Texas Deceptive Trade Practices Act with respect to the sale of individual units at The Montane as such claims related to purely common elements of the Montane, (b) the Wrightwood Parties as alter egos as such claims related to purely common elements of the Montane, (c) ICI for breach of its May 31, 2005, Management Agreement with

MONTANE SETTLEMENT AGREEMENT – Page 3

the Association and negligence as such claims related to purely common elements of the Montane, (d) DDC for breach of warranty and negligence as such claims related to purely common elements of the Montane, and (e) La Grange for negligence, trespass, nuisance, loss of lateral support, and violations of Section 11.086 of the Texas Water Code;

WHEREAS, the Drexel Parties brought claims in the Original Lawsuit against WCSE and Wrightwood for indemnification, contribution, and set-off under the May 3, 2006 Settlement Agreement;

WHEREAS, DDC has asserted a claim against the La Grange Parties for contribution and indemnity;

WHEREAS, on May 22, 2009, WCSE, CF SLP, and CF LP (collectively, "**Debtors**") each filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois ("**Bankruptcy Court**") and thus initiated bankruptcy cases respectively styled as *In re WCSE Montane Limited Partnership* (Case No. 09-18752), *In re CF Montane SLP, LLC* (Case No. 09-18747), and *In re CF Montane LP, LLC* (Case No. 09-18750) (collectively, the "**Bankruptcy Cases**");

WHEREAS, the Debtors are acting as debtors-in-possession and no trustee has been appointed to administer the Debtors' estates;

WHEREAS, each Party denies liability in any amount to any other Party;

WHEREAS, the Parties wish to settle, compromise, and conclusively resolve all of their disputes related to the subject matter of the Original Lawsuit and all claims ultimately asserted therein, including these matters consolidated therewith;

NOW THEREFORE, for and in consideration of the premises, mutual promises, releases and agreements contained herein, which consideration, each Party, their successors and assigns agrees is adequate, the Parties agree as follows:

MONTANE SETTLEMENT AGREEMENT – Page 4

## AGREEMENTS AND RELEASES

1. **PAYMENT TO LA GRANGE BY THE ASSOCIATION**. The Association shall pay to La Grange the sum of $700,000.00 within three days of the date on which the last party to this Agreement executes it.

2. **PAYMENT TO THE ASSOCIATION BY ICI**. ICI shall pay to the Association the sum of $25,000.00 within three days of the date on which the last party to this Agreement executes it.

3. **PAYMENT TO THE ASSOCIATION AND LA GRANGE BY THE WRIGHTWOOD PARTIES**. One or more of Wrightwood, Fund GP, and/or the Fund shall collectively pay approximately $749,000.00 in consideration for releases of the claims all Parties, including Debtors, may have against them, including any and all veil piercing and alter ego claims. In return for the releases of all claims against them owned by the Association as specified in the Texas Property Code and all other parties, Debtors shall pay a total of approximately $21,000.00, which constitutes approximately 100% of Debtors' available funds and shall make the universal releases of all Parties herein described. The total of these payments, $770,000, shall be paid to the Association and La Grange by transferring such sum to the Joint Repair Account (defined below) within five days of Bankruptcy Court approval. As a pre-condition to seeking Bankruptcy Court approval, the Association shall hold a special owners meeting and obtain ratification of this Agreement and by the current unit owners.

4. **REPAIRS TO 2838 AND 2848 WOODSIDE**. La Grange and the Association will open a joint account requiring joint signatures for any action (the Joint Repair Account) in their names at a mutually agreeable bank within three business days after the last party to this Agreement executes it. Nether party shall arbitrarily or in bad faith withhold its signature from any check request. Such signatures must be made timely so as to ensure that all payments are made to contractors in compliance with all applicable Texas laws. La Grange will deposit

$500,000.00 and the Association will deposit $25,000.00 into this account within five days after it is opened.  La Grange and the Association agree that the sum of $1,295,000.00 that will be delivered to this account after La Grange, the Association, and the Wrightwood Parties make their respective contributions will be used exclusively to fund (a) the repair of 2838 and 2848 Woodside in accordance with the Olden Bid attached as Exhibit A and (b) reasonable oversight fees to be charged by Wiss Janney Elstner Associates, Inc. ("**WJE**") to ensure that both properties are repaired commensurate with the Olden Bid.   Any dispute regarding any disbursements of funds from the Joint Repair Account or the necessity of any change order to effectuate the purpose of the Olden Bid shall be submitted to WJE for binding determination so long as such dispute relates to the scope of repair and/or the payment therefrom.   It is anticipated that it will cost $1.1 million to repair the properties in accordance with the Olden Bid and to pay WJE; however, in the event that $1,295,000.00 is insufficient to satisfy all costs of repairing 2838 and 2848 Woodside in accordance with the Olden Bid and all WJE oversight charges, the Association will pay all necessary additional sums to ensure that 2838 and 2848 Woodside are reasonably promptly repaired in accordance with the Olden Bid and that all contractors, subcontractors, and WJE have been fully and timely paid.  If any of the $1,295,000.00 originally transferred to the joint account remains after 2838 and 2848 Woodside have been repaired in accordance with the Olden Bid and all contractors, subcontractors, and WJE have been fully and timely paid, 60% of such funds will be delivered to the Association and the remaining 40% will be delivered to La Grange.  Within 5 days after (a) the delivery of any remaining funds to La Grange and the Association or (b) the completion of repairs to 2838 and 2848 Woodside, whichever is later, La Grange and the Association will close the Joint Repair Account.  All parties agree to execute all documents reasonably necessary to effectuate the program set forth in this paragraph.

MONTANE SETTLEMENT AGREEMENT – Page 6

5.    **The Nine Parking Spaces**. La Grange will deliver a check made payable to the Association in the amount of $200.00 which will constitute full and final payment of rent for lease of the nine parking spaces that are the subject of the January 9, 2006 Lease (the "Nine Parking Spaces") for all past periods and the period from the effective date of the Agreement through the day before La Grange closes a sale of 2838 Woodside to an entity in which La Grange does not own an interest or to a person that is not a member of the immediate family of Ray Davis or Kelcy Warren.  The Association and La Grange acknowledge that the Lease is in full force and effect, and that the Wrightwood Parties are not party to and have no obligations of any kind under the Lease.  From the effective date of the Agreement through the day before La Grange closes a sale of 2838 Woodside to an entity in which La Grange does not own an interest or to a person that is not a member of the immediate family of Ray Davis or Kelcy Warren, La Grange will not have the exclusive right to the Nine Parking Spaces, but will share use of the spaces with the Association's members and their guests on a first-come, first-served basis.  The Association's members and their guests shall use the parking spaces at their own risk and expense, and all terms of the Lease, excluding those (a) inconsistent with the first clause of this sentence and (b) those regarding exclusive use rights that are inconsistent with the sharing arrangement provided in this paragraph, will remain in force and govern La Grange's use of the Nine Parking Spaces.  At 11:59 p.m. the day before La Grange closes a sale of 2838 Woodside to an entity in which La Grange does not own an interest or to a person that is not a member of the immediate family of Ray Davis or Kelcy Warren, all terms of the Lease, including La Grange's exclusive use rights, will govern the relationship between the parties.

6.    **Mutual Release**.  The Parties, on their own behalf and on behalf of their past and present agents, officers, attorneys, directors, partners, members, unit owners, employees, shareholders, subsidiaries, jointly and severally, do hereby completely, finally, fully,

unconditionally, unqualifiedly, and irrevocably release each other, as well as their past and present agents, officers, attorneys, directors, partners, members, unit owners, employees, shareholders, parent companies, subsidiaries, affiliated entities, and lawyers, insurers (including but not limited to Discover Specialty Insurance Company), and third party administrators (including but not limited to Innovative Risk Management, Inc.) (collectively, "Released Entities"), from any and all claims, debts, liens, demands, losses, damages, rights or causes of action, lawsuits, expenses, and liabilities of whatever nature or of whatever kind, both in law and in equity, known or unknown, which the Parties had, now have, or may hereafter have against each other or the Released Entities, by reason of occurrences, events, or acts arising on or before the date of execution of this Agreement including without limitation claims in the County Court Suit and (1) which are in any way related to 2838 or 2848 Woodside; The Montane; the construction of The Montane and units conveyed; the May 31, 2005, Management Agreement; the January 9, 2006, Lease Agreement; the May 3, 2006 Settlement Agreement; claims for defense, contribution, or indemnity related to any claim asserted by any party prior to the effective date of this Agreement (or hereafter as to past construction); veil piercing or alter ego claims; or assessments (including future assessments) imposed by the Association, or (2) which were or could have been asserted in the Original Lawsuit. It is expressly agreed and understood that the release from the Association shall be and is a release only of claims related to matters affecting the condominiums as specified in Chapter 82 of the Texas Property Code, and in no way should be construed as a release of any claim owned or held by an individual unit-owner (for which individual unit-owner claims releases may be separately executed and delivered to parties specifically requiring same), whether past or present that must by law be asserted exclusively by such individual. However, the Parties are not releasing each other from the obligations provided by and set forth in this Agreement.

MONTANE SETTLEMENT AGREEMENT – Page 8

7.   **Dismissal of Debtors' Bankruptcies**.   Within three business days of the execution of this Agreement and ratification by the Montane unit owners, Debtors shall submit this Agreement to the Bankruptcy Court via a motion to approve the settlement and via a motion to dismiss Debtors' bankruptcies.   By executing this Agreement, the Parties manifest their agreement to said motions. The Bankruptcy Court shall retain jurisdiction to enforce its approval order and the terms of the settlement, to the extent they pertain to the Debtors

8.   **The Lawsuit**.   Within five days of Bankruptcy Court approval, the parties will jointly file the motion to dismiss with prejudice attached as Exhibit B in the Original Lawsuit now pending in Case No. 3:09-CV-0956-B, in the United States Bankruptcy Court for the Northern District of Texas.

9.   **No Admission**.   The Parties to this Agreement understand that the settlement set forth herein is not an admission of liability by any party but, rather, is made to resolve a disputed matter and to end the cost of continuing with the Original Lawsuit.

10.   **Representations**.   The Parties hereby warrant and represent as follows:

(a)   ` The Parties, and their respective constituents, are the sole owners (subject to the Association's reservation of the private claims set forth in paragraph 6) of the claims, debts, liens, demands, losses, damages, rights or causes of action, lawsuits, expenses, and liabilities being released by execution of this Agreement, and neither has transferred, assigned nor otherwise encumbered such claims, debts, liens, demands, losses, damages, rights or causes of action, lawsuits, expenses, and liabilities or any part of those claims, debts, liens, demands, losses, damages, rights or causes of action, lawsuits, expenses, and liabilities.

(b)   The signatory to this Agreement signing on behalf of his, her, or its respective Party (subject to the Association's reservation in paragraph 6) is fully

MONTANE SETTLEMENT AGREEMENT – Page 9

authorized and legally competent to execute this Agreement as a legal, valid and binding

act and deed of such party, and is a duly authorized representative of such party.

11.     **Effect on Obligations under Agreement**.  Nothing contained herein is intended

to release the Parties from their respective obligations provided by and set forth under this

Agreement.

12.     **Amendments**.  No amendments or variations of the terms of this Agreement shall

be valid unless made in writing and signed by the representatives of the Parties or their

respective successors in interest.

13.     **Applicable Law**.  This Agreement shall be governed by and construed in

accordance with the laws of the State of Texas.

14.     **Entire Agreement/Disclaimer of Reliance**.  This Agreement constitutes the

entire agreement between the Parties with respect to the subject matter hereof and supersedes any

prior agreements, understandings, conditions, representations, and warranties, whether oral or

written, with respect to this subject matter hereof.  The Parties further declare, represent, and

acknowledge that no promise, agreement, or representation has been made in connection with

this Agreement, nor has any promise, agreement, or representation been relied upon by any of

the Parties in executing this Agreement, except for those which are expressly set forth in this

Agreement.

15.     **Valid Agreement**.  This Agreement is subject to and conditioned upon the entry

of an order by the Bankruptcy Court in the Bankruptcy Cases that approves this Agreement and

the compromises reflected herein ("**Court Approval**").  Subject only to Court Approval, this

Agreement has been duly authorized and constitutes a legal, valid and binding obligation of each

party hereto and is enforceable against each party in accordance with its terms.

MONTANE SETTLEMENT AGREEMENT – Page 10

16.   **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same instrument.  Neither party to this Agreement shall be bound hereby until a counterpart of this Agreement has been executed by the other party hereto.  It shall not be necessary for each party to execute the same counterpart, but each party hereto shall receive one or more counterparts signed by both Parties hereto.

**IN WITNESS WHEREOF**, each party has executed this Agreement as of the dates indicated below, but effective as of the latest date shown below.

**AGREED:**

**LA GRANGE ACQUISITION, L.P.**

By: _Kelcy Wa_____   Date: _7/15/09_____
Its: _____

**E.T. COMPANY, LTD.**

By: _Kelcy Wa_____   Date: _7/15/09_____
Its: _____

**DREXEL MONTANE CONDOMINIUM ASSOCIATION, INC.**
**N/K/A THE MONTANE CONDOMINIUM ASSOCIATION**

By: _____   Date: _____
Its: _____

By: _____   Date: _____
**JAMES E. GIRARDS**

16.   **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same instrument.  Neither party to this Agreement shall be bound hereby until a counterpart of this Agreement has been executed by the other party hereto.  It shall not be necessary for each party to execute the same counterpart, but each party hereto shall receive one or more counterparts signed by both Parties hereto.

**IN WITNESS WHEREOF**, each party has executed this Agreement as of the dates indicated below, but effective as of the latest date shown below.

**AGREED:**

**LA GRANGE ACQUISITION, L.P.**

By:_____     Date:_____
Its:_____

**E.T. COMPANY, LTD.**

By:_____     Date:_____
Its:_____

**DREXEL MONTANE CONDOMINIUM ASSOCIATION, INC.**
**N/K/A THE MONTANE CONDOMINIUM ASSOCIATION**

By: *Donald Weintraub*   Donald Weintraub   Date: 7/14/09
Its: *President*

By:_____     Date:_____
     **JAMES E. GIRARDS**

**WCSE MONTANE LIMITED PARTNERSHIP**
**F/K/A DREXEL MONTANE LIMITED PARTNERSHIP**
**By:  CF Montane SLP LLC, its general partner**

By:_____     Date:_____

MONTANE SETTLEMENT AGREEMENT – **Page 11**

16.    **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same instrument. Neither party to this Agreement shall be bound hereby until a counterpart of this Agreement has been executed by the other party hereto. It shall not be necessary for each party to execute the same counterpart, but each party hereto shall receive one or more counterparts signed by both Parties hereto.

IN WITNESS WHEREOF, each party has executed this Agreement as of the dates indicated below, but effective as of the latest date shown below.

**AGREED:**

**LA GRANGE ACQUISITION, L.P.**

By:_____    Date:_____
Its:_____

**E.T. COMPANY, LTD.**

By:_____    Date:_____
Its:_____

**DREXEL MONTANE CONDOMINIUM ASSOCIATION, INC.**
**N/K/A THE MONTANE CONDOMINIUM ASSOCIATION**

By:_~Donald Weintraub~_    Donald Weintraub    Date:_7/19/09_
Its:_President_

By:_~signature~_____    Date:_8-5-09_
     **JAMES E. GERARDS**

**WCSE MONTANE LIMITED PARTNERSHIP**
**F/K/A DREXEL MONTANE LIMITED PARTNERSHIP**
**By: CF Montane SLP LLC, its general partner**

By:_____    Date:_____

MONTANE SETTLEMENT AGREEMENT – Page 11

09-18752:40.2:Motion to Authorize:Exhibit A Entered: 8/6/2009 03:40 PM by:Peter Roberts Page 16 of 20

16.   **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same instrument.  Neither party to this Agreement shall be bound hereby until a counterpart of this Agreement has been executed by the other party hereto.  It shall not be necessary for each party to execute the same counterpart, but each party hereto shall receive one or more counterparts signed by both Parties hereto.

**IN WITNESS WHEREOF**, each party has executed this Agreement as of the dates indicated below, but effective as of the latest date shown below.

**AGREED:**

**LA GRANGE ACQUISITION, L.P.**

By:_____     Date:_____
Its:_____


**E.T. COMPANY, LTD.**

By:_____     Date:_____
Its:_____


**DREXEL MONTANE CONDOMINIUM ASSOCIATION, INC.**
**N/K/A THE MONTANE CONDOMINIUM ASSOCIATION**

By:_____     Date:_____
Its:_____



By:_____     Date:_____
   **JAMES E. GIRARDS**


**WCSE MONTANE LIMITED PARTNERSHIP**
**F/K/A DREXEL MONTANE LIMITED PARTNERSHIP**
**By:  CR Montane SLP LLC, its general partner**

By:_____     Date:_____
Its: VICE PRESIDENT

MONTANE SETTLEMENT AGREEMENT – Page 11

**CF MONTANE SLP LLC**

By:_____    Date:_____
Its: VICE PRESIDENT

**CF MONTANE LP LLC**

By:_____    Date:_____
Its: VICE PRESIDENT

**WRIGHTWOOD CAPITAL STRATEGIC EQUITY FUND I GP LLC**
By: Wrightwood Capital Fund Manager LLC, its sole member

By: DAVID J. FRIEDMAN    Date:_____
Its: VICE PRESIDENT

**WRIGHTWOOD CAPITAL STRATEGIC EQUITY FUND I LP**
By: Wrightwood Capital Strategic Equity Fund I GP LLC, its general partner
By: Wrightwood Capital Fund Manager LLC, its sole member

By: DAVID J. FRIEDMAN    Date:_____
Its: VICE PRESIDENT

**WRIGHTWOOD CAPITAL LLC**

By:_____    Date:_____
Its: Bruce E. Cohen, CEO

**DREXEL DEVELOPMENT COMPANY, LLC**

By:_____    Date:_____
Its:_____

**DGP, LLC**

By:_____    Date:_____
Its:_____

**WIGGINS WOODSIDE PARTNERSHIP**

By:_____    Date:_____

MONTANE SETTLEMENT AGREEMENT ~ Page 12

**CF MONTANE SLP LLC**

By:_____     Date:_____
Its:_____


**CF MONTANE LP LLC**

By:_____     Date:_____
Its:_____


**WRIGHTWOOD CAPITAL STRATEGIC EQUITY FUND I GP LLC**
**By: Wrightwood Capital Fund Manager LLC, its sole member**

By:_____     Date:_____
Its:_____


**WRIGHTWOOD CAPITAL STRATEGIC EQUITY FUND I LP**
**By: Wrightwood Capital Strategic Equity Fund I GP LLC, its general partner**
**By: Wrightwood Capital Fund Manager LLC, its sole member**

By:_____     Date:_____
Its:_____


**WRIGHTWOOD CAPITAL LLC**

By:_____     Date:_____
Its:_____


**DREXEL DEVELOPMENT COMPANY, LLC**

By:_____     Date: 7/15/09
Its: _President_


**DGP, LLC**

By:_____     Date: 7/15/09
Its: _Vice President_


**WIGGINS WOODSIDE PARTNERSHIP**

By:_____     Date: 7-16-09


MONTANE SETTLEMENT AGREEMENT – Page 12

Its: _____

**SITE RESOURCES MONTANE, LTD.**

By: _____          Date: __7/15/09_____

Its: _____

**MONTANE INVESTORS LIMITED PARTNERSHIP**

By: _____          Date: __7/16/09_____

Its: _____

By: _____          Date: __7/16/09_____

**R. GLENN WIGGINS**

By: _____          Date: _____

**ROBERT DALE**

By: _____          Date: __7/15/09_____

**ROBERT M. EDELMAN**

**INTERCITY INVESTMENTS, INC.**

By: _____          Date: _____

Its: _____

By:_____        Date:_____
Its:_____

**SITE RESOURCES MONTANE, LTD.**

By:_____        Date:_____
Its:_____

**MONTANE INVESTORS LIMITED PARTNERSHIP**

By:_____        Date:_____
Its:_____

By:_____        Date:_____
   R. GLENN WIGGINS

By:_____        Date: 8/3/09
   ROBERT DALE

By:_____        Date:_____
   ROBERT M. EDELMAN

**INTERCITY INVESTMENTS, INC.**

By:_____        Date:_____
Its:_____

Its:_____


**SITE RESOURCES MONTANE, LTD.**

By:_____       Date:_____

Its:_____


**MONTANE INVESTORS LIMITED PARTNERSHIP**

By:_____       Date:_____

Its:_____


By:_____       Date:_____

   **R. GLENN WIGGINS**


By:_____       Date:_____

   **ROBERT DALE**


By:_____       Date:_____

   **ROBERT M. EDELMAN**


**INTERCITY INVESTMENTS, INC.**

By:_____       Date:_____7/15/09_____

Its:____Sr. V.P._____